FILED

2005 Jan-21  PM 04:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CLAUZELL WILLIAMS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: CV 03-P-0164-S** |
| | } | |
| **FEDERAL RESERVE BANK OF ATLANTA,** | } | |
| | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

The court has before it Defendant's Motion for Summary Judgment, (Doc. # 50); Defendant's Motion to Strike Portions of Declarations Submitted (Doc. # 73); Defendant's Motion to Strike Portions of Plaintiff's Evidentiary Submission (Tabs 3, 5, and 6) (Doc. # 74); and Defendant's Motion to Strike Evidence Submitted Under Tab 50 of Plaintiff's Evidentiary Submission (Doc. # 75). The above-referenced motions have been fully briefed, and the court heard oral argument on these motions on December 21, 2004. (Docs. # 37, 72, 85).

Plaintiff Clauzell Williams ("Williams") commenced this action by filing a complaint on January 17, 2002, alleging that the Federal Reserve Bank of Atlanta (the "Bank") discriminated against her because of her race (African-American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and 42 U.S.C. §1981 ("Section 1981"), and because of her sex (female) in violation of Title VII and the Equal Pay Act, 29 U.S.C. 206(d).

For the reasons outlined below, Defendant's Motion for Summary Judgment is due to be granted because there are no disputed issues of material fact and Defendant has demonstrated that it is entitled to judgment as a matter of law. The court finds that Defendant's Motion to Strike

Portions of Declarations Submitted is due to be granted, in part, as set forth in this opinion. The remainder of the pending motions to strike will be denied.[1]

## I.   Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-08 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 123 S. Ct. 2148 (2003), that allocation scheme applies only in cases where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.

---

[1] The court has reviewed Defendant's motions to strike and will assume, without deciding, for the purposes of summary judgment only, that the remainder of Defendant's motions are due to be denied and that the evidence sought to be stricken is properly considered by the court in its summary judgment analysis. As the court is granting summary judgment wholly in favor of the Defendant, it finds that, even considering the evidence sought to be stricken, Plaintiff has not met her burden to refute the Defendant's motion for summary judgment.

1987).[2]

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 801-02; *Burdine*, 450 U.S. at 251-54.

---

[2] Here, Plaintiff has presented only circumstantial evidence of discrimination. Although Plaintiff points to two statements which she claims are direct evidence of discriminatory animus, the court finds that neither rises to the level of direct evidence. Plaintiff relies on the following statements: (1) Margaret Thomas's affirmative response to the question of whether she believes Defendant is a "white old boys network;" and (2) Jack Guynn's comment to a Director "that if he promoted any more he might as well go down and open the door." (Doc. # 58, at 8-9). Both of these statements are isolated events that bear no relation to Plaintiff and are therefore not direct evidence of discrimination. *Carter v. City of Miami*, 870 F.2d 578 (11th Cir.1989); *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, (11th Cir. 1997). Moreover, evidence that is subject to more than one interpretation, *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 n. 2 (11th Cir.1996), or "devoid of any meaningful context," *Standard v. A.B.E.L., Inc.*, 161 F.3d 1318, 1329 (11th Cir. 1998) cannot constitute direct evidence. Contrary to Plaintiff's assertions, this is not a direct evidence case.

3

## II.    Relevant Undisputed Facts[3]

Clauzell R. Williams ("Williams") is an African-American female employee of the Birmingham Branch of the Bank. (Williams Depo. Exs. 25, 26). Williams began working at the Bank in 1973 in a Messenger position and eventually progressed to a supervisory position. (Williams Depo. 43, 44, 79).  In June 1998, Williams was removed from her supervisory position and reassigned to the newly-created Grade 30 Customer Service Coordinator position, which she currently occupies.  (Williams Dec. ¶14).

From July 1997 through the end of December 2001, Andre T. Anderson, who is African-American, was a Vice President of the Bank and the Branch Manager of the Birmingham Branch. (Anderson Dec. ¶ 1, 2).  Anderson was succeeded as Branch Manager by Lee Jones on January 1, 2002.  (Jones Depo. 67, Anderson Dec. ¶ 2).

### A.    Facts Regarding Promotions

In January 1999, the Bank posted a notice of two vacancies for the position of Financial Services Director.[4]  (Anderson Dec. ¶ 8; Pinson Depo., 128-30; Williams Depo. 283; Wright Depo.

---

[3] If facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  The court notes that, even though it admonished the parties to work together to narrow their statements of fact to only material facts, and warned the parties to stay away from argumentative and color language, the Plaintiff's facts continue to contain argumentative, nonmaterial facts.  Accordingly, the court has not included any such facts in its recitation.  Moreover, on many occasions, Plaintiff cited to her declaration or deposition testimony for "facts" about which she had no personal knowledge, or her brief included an evidentiary citation that did not support the "fact" recited.  The court has noted these instances where appropriate.  Finally, the court has noted those portions of Plaintiff's declaration that are stricken because they contradict her unambiguous prior deposition testimony without adequate explanation.  *Van T. Junkins v. U.S. Indus.,* 736 F.2d 656, 657-58 (11th Cir. 1984).

[4] Although Plaintiff states that she disputes this fact, the evidence cited by her does not directly dispute Defendant's evidence.

4

67).  Williams did not apply for either of those positions. (Anderson Dec. ¶ 8). Bruce Wright (African-American) and Bobby Pinson (White) were selected for those Director positions, and they were promoted in March 1999.  (Anderson Dec. ¶ 8-9).  Wright was assigned responsibility for the Payment Services and Adjustments/Settlement areas, and Pinson was assigned to Federal and Regional Check Processing. (Anderson Dec. ¶ 9, Ex. 6).

In June 2000, Ralph LaRue, the Director over the Business Development and Customer Service areas voluntarily stepped down as Director. (Anderson Dec. ¶ 11). From June 1, 2000 through the remainder of the year, there was no Director over the Customer Service and Business Development areas. (Anderson Dec. ¶ 13).  Then, in 2001, during a Branch restructuring led by Anderson, the Bank decided to reorganize the responsibilities of Directors and to give Pinson the additional responsibility of overseeing Business Development and Customer Service.  (Anderson Dec, ¶ 10, 17-19, Ex. 7; Fullerton Depo. 112-114).  The Bank believed that, of all the Bank Directors, Pinson had the most in-depth and broadest overall knowledge of the entire check processing function of the Bank. (Anderson Dec. ¶ 17; Fullerton Depo. 154-155). Anderson did not consider giving these responsibilities to any person who was not already a Director. (Anderson Dec. ¶ 17).  Williams had previously managed or supervised in all three functions that were placed under Pinson's management:  Payor Bank Services, Customer Services, and Payment Services Operations. (Williams Dec. ¶ 19, Ex. 1).  However, Williams was not qualified for the position because she was not already a Director. (Anderson Dec. ¶ 20; Anderson Depo. 200-01).

At the same time in 2001, Kevin Johnson (African-American) was promoted to the other vacant Director position.  The Bank determined that Johnson had exhibited the skills needed to perform at the Director level. (Anderson Dec. ¶ 14). At the time of his promotion, Johnson had not

5

only mastered the technical and operational understanding of the Payment Services Operations area, but he had demonstrated outstanding employee relations and supervisory skills. (Anderson Dec. ¶ 14).

**B.      Facts Regarding Performance Appraisals**

In December 1994 and December 1995, Williams received "Met Performance Requirements" ratings on her performance evaluations. (Williams Depo. Exs. 3, 4).  In January 1997, Williams received an "Exceptional" rating. (Williams Depo. Ex. 5). In December 1997, Williams received another "Exceptional" rating in her performance of the job of Grade 29 Section Manager in Payor Bank Services. (Williams Depo. Ex. 6). Following her transfer Grade 30 Customer Service Coordinator position in June 1998, she received an "Exceptional" rating on her "exit" evaluation completed by her former supervisor. (Williams Depo. Ex. 7, p 001754-59).[5]

In her new Customer Service Coordinator position, Plaintiff was supervised by a new supervisor, Ralph LaRue.  (Anderson Dec. ¶ 4; Williams Depo. Ex. 8). On the first performance evaluation in her new position, in June 1999, Williams received a "Doing Fine" rating. (Williams Depo. Ex. 8). LaRue testified that he did not know about Williams' EEOC charge until sometime after her evaluation was completed. (LaRue Depo. 96-98)  The following year in 2000, Plaintiff was evaluated by another supervisor, Trev Brown, and received another "Doing Fine" rating. (Williams Depo. Ex. 9).

**C.      Facts Regarding Compensation**

When Williams was transferred to her Grade 30 Customer Service Coordinator position in

---

[5] This evaluation was completed in September 1998, approximately three months after Plaintiff filed her initial EEOC charge. (Williams Dec. ¶ 17, Ex. 1; Ex. 32; Williams Depo. 111, Exs. 7, 25).

1998, she received a 10.6 percent pay increase. (Williams Depo. 159-160; Ex. 11). Until June 2001, the pay Williams received was less than her only male peer, Russell Lloyd, whose annual salary exceeded Williams' by $1900.  (Ex. 1, ¶14; Williams Dec. ¶ 14, Anderson Dec. (Def. Ex. B, ¶ 5). Williams and Lloyd were in the same pay grade and had the same job title. (Anderson Dec. ¶ 5).

     **D.**     **Plaintiff's Claims**

Williams filed a charge of discrimination with the EEOC on June 25, 1998, alleging that the Bank discriminated against her because of her race in violation of Title VII.  (Williams Depo. Ex. 25).  Specifically, she alleged discrimination with regard to "disciplinary actions, performance ratings, job assignments, training, promotions, compensation, and other terms, conditions, and privileges of employment." (*Id.*).  She also alleged that Defendant "engaged in a pattern and practice of maintaining racially discriminatory employment practices designed to hire and promote white individuals and to deny African-Americans promotions, regardless of their qualifications" and that those practices have disproportionately affected African-American employees. (*Id.*).  Williams filed an amended charge of discrimination with the EEOC on August 27, 1998, adding allegations that the Bank discriminated against her because of her sex in violation of Title VII and the Equal Pay Act. (Williams Depo. Ex. 26).

On September 6, 2000, the EEOC issued a Determination on Plaintiff's charge, finding "reasonable cause to believe that the [Defendant] discriminated against [Plaintiff] and against Blacks as a class, with regard to job assignments, training, performance ratings, promotions and compensation because of race," while determining there was no reasonable cause to believe Defendant discriminated against Plaintiff with respect to disciplinary matters.  (Doc. # 60, Ex. 29).

Plaintiff's lawsuit was filed on January 17, 2002. Plaintiff and six other employees of Defendant initially filed one lawsuit alleging Defendant had discriminated against them on the basis of race. Those lawsuits were eventually severed into five cases, including this one. *Drake v. Federal Reserve Bank of Atlanta*, 02-CV-IPJ-146-S*; Barron v. Federal Reserve Bank of Atlanta*, 03-CV-RDP-156-S; *Myricks v. Federal Reserve Bank of Atlanta*, 03-CV-SLB-163-S; *Williams v. Federal Reserve Bank of Atlanta*, 03-CV-RDP-164-S; *Ambrose and Gaines v. Federal Reserve Bank of Atlanta*, 03-CV-LSC-165-S.

The complaint's allegations pertaining to Plaintiff in this case are similar to those for the other six original plaintiffs, including allegations of discrimination in promotions, performance ratings, training, and compensation. (Complaint ¶ 29-36).[6] With the exception of *Drake v. Federal Reserve Bank of Atlanta*, 02-CV-IPJ-146-S, which was settled amicably, summary judgment for Defendant has been granted in all of the other severed cases. *See Ambrose and Gaines v. Federal Reserve Bank of Atlanta*, 03-CV-LSC-165-S (Doc. # 32, July 29, 2003); *Myricks v. Federal Reserve Bank of Atlanta*, 03-CV-SLB-163-S (Doc. # 31, March 29, 2004); *Barron v. Federal Reserve Bank of Atlanta*, 03-CV-RDP-156-S (Doc. # 38, August 10, 2004). The cases have been appealed to the Eleventh Circuit, but only one opinion has been issued – an affirmance of the grant of summary judgment in *Ambrose and Gaines v. Federal Reserve Bank of Atlanta*, 03-CV-165-LSC (Doc. # 47).

---

[6] Specifically, the complaint advanced the following claims on Williams' behalf: (1) disparate treatment in promotions because of race (Doc. # 2, ¶ 63, 69, 77); (2) discriminatory pattern and practice/ disparate impact of rating African-American employees lower on performance reviews than white employees (Doc. # 2, ¶ 64, 69, 77); (3) retaliation in the form of lowered performance evaluations (Doc. # 2, ¶ 65); (4) denial of training opportunities because of race (Doc. # 2, ¶ 66, 69); and (5) discriminatory compensation because of race and/or sex (Doc. # 2, ¶ 67, 69, 77, 84).

III.    **Applicable Substantive Law and Discussion**

As a threshold matter, the court notes that Plaintiff's EEOC charge, complaint, and summary judgment opposition brief each assert a veritable plethora of claims.  The court need not catalogue the progression of Plaintiff's claims, however, because the parties conceded at oral argument[7] that the following claims are the only claims left in this case: (1) disparate treatment in promotion because of race[8] under Title VII and § 1981 based on the 1999 Directors positions awarded to Pinson and Wright and the 2001 Director positions awarded to Pinson and Johnson; (2) retaliation under Title VII and § 1981 based on the Plaintiff's performance evaluations and the promotions outlined above; (3) disparate pay under Title VII and the Equal Pay Act; and (4) disparate treatment under Title VII and § 1981 based on the June 1998 reassignment of Plaintiff from a management position.

———————————

[7] The court notes that Plaintiff's counsel candidly conceded at oral argument that a number of the claims pled in Plaintiff's original consolidated complaint, including disparate impact, pattern and practice and disparate treatment in training, do not stand alone in this severed case or with relation to this particular Plaintiff. As explained earlier, Plaintiff is one of six employees of Defendant who initially filed one lawsuit that was then severed. Although Plaintiff initially raised her disparate impact, pattern and practice, and training claims in opposition to summary judgment in this case, she clarified at oral argument that she mentioned those claims for the sole purpose of preserving her argument that severance of these cases was improper.  Plaintiff maintains that, given her assertion of claims such as disparate impact and pattern and practice that demonstrate a history of discrimination by Defendant,  the cases should never have been severed.  This court believes that Judge Johnson's severance of these cases was well within the court's discretion.  Nonetheless, the court notes that, even if those claims had remained in this case, summary judgment would have been appropriate for the same reasons articulated by this court in *Barron v. Federal Reserve,* 03-CV-RDP-156-S, (Doc. # 38, August 10, 2004).

[8] At oral argument, Plaintiff suggested that she is also claiming that Defendant's failure to promote her was sex discrimination.  Plaintiff's complaint does not mention sex discrimination in any form other than discriminatory compensation, and her opposition brief does not argue sex discrimination in promotions.  Moreover, Plaintiff has offered no evidence, in her brief or at oral argument, to suggest that any of the disputed promotional decisions were based on sex.  It appears to the court that any sex discrimination claim is limited to discriminatory pay.  Accordingly, the court will not analyze Plaintiff's promotion claims under a sex discrimination analysis.

### A.    Disparate Treatment in Promotions

In her deposition, Williams referred to four promotions that she claims she should have been awarded: two Director positions filled in March 1999 which were given to Wright and Pinson (the "1999 promotions") and two Director positions awarded in January 2001 to Pinson and Johnson (the "2001 promotions"). (Williams Depo. 396-99).[9]  Plaintiff claims that the denial of these promotions was race discrimination under both Title VII and § 1981.  Although the substantive analysis under Title VII and § 1981 is the same,  *Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (holding that Title VII and § 1981 have the same requirements of proof and use the same analytical framework), the statute of limitations periods differ.

### 1.    The 1999 Promotions Are Procedurally Barred under § 1981

Plaintiff's 1999 promotion claims fall outside of the limitations period for § 1981, and summary judgment is proper on these § 1981 claims for this reason alone.  In *Jones v. R.R. Donnelley & Sons Co.*, 124 S.Ct. 1836 (2004), the Supreme Court clarified that two years is the appropriate limitations period for promotion claims under § 1981.  *Jones*, 124 S.Ct. at 1846 (applying a two-year limitations period to causes of action that constituted a violation under the pre-1990 version of § 1981 and *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)).  Plaintiff filed her complaint on January 17, 2002, and because the 1999 promotions occurred prior to January 17, 2000, those claims are barred by the two-year statute of limitations.  Thus, Plaintiff's 1999 promotion claims can only proceed under Title VII.

---

[9] Although Plaintiff also identified a fifth position filled by Tim Shaw, Plaintiff has conceded that claim.

### 2.     The 2001 Promotions Are Procedurally Barred under Title VII

Defendant maintains that all four of Williams' promotion claims are procedurally barred under Title VII because, among other things, they occurred after the 1998 filing of Plaintiff's EEOC charges, which were never amended to include those claims.  The court agrees with respect to the 2001 promotion claims, which arose after the EEOC closed its investigation of Plaintiff's EEOC charges, but finds that the 1999 promotions are not procedurally barred because they were within the scope of the EEOC's investigation that could reasonably be expected to grow out of the charge.

Title VII generally requires a plaintiff to file an EEOC charge of discrimination within 180 days of the alleged discrimination and prior to a lawsuit, or her claim is barred.  *See* 42 U.S.C. § 2000e-5(e); *Ross v. Buckeye Cellulose*, 980 F.2d 648, 657-58 (11th Cir. 1993).[10]  The scope of a Title VII lawsuit is based on, and limited to, the scope of the charge and the EEOC's investigation that could reasonably be expected to grow out of the charge.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1226 (11th Cir. 2001); *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000); *Butler v. Matsushshita Ind. Corp.*, 203 F.R.D. 575-582-83 (N.D. Ga. 2001).  As another judge of this court has held, "an EEOC charge that challenges particular denied promotions may be broad enough to allow judicial claims regarding denied promotions regarding other positions."  *Miller v. Bed, Bath & Beyond, Inc.*, 185 F.Supp.2d 1253, 1264 (N.D. Ala. 2002).  Therefore, "where a plaintiff's original charge alleged discriminatory denials of promotions, the investigation could reasonably be expected to include the investigation of future denials of promotions as long as the case was still pending before the EEOC."  *Miller*, 185 F. Supp. 2d at 1264.  Under this analysis, Plaintiff would be

---

[10] This policy is not without exception; for example, the limitations period may be adjusted in situations involving a continuing violation or when equitable tolling is applicable. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).

permitted to pursue other promotions claims not specifically identified in the charge provided that they "arose out of position denied between the filing of h[er] original charge and the EEOC's issuance of a right-to-sue notice." *Miller,* 185 F.Supp.2d at 1264.

In this case, none of the promotions that Williams alleges she was discriminatorily denied occurred before she filed her June 25, 1998 EEOC charge or her August 27, 1998 amended charge.[11] However, the 1999 promotions did occur prior to September 6, 2000, which is the date the EEOC issued its determination letter.  (Doc. # 60, Ex. 29).   Accordingly, the court finds that because Plaintiff's amended charge generally claimed denials of promotions as a basis for the alleged discrimination (Doc. # 60, Ex. 33), the EEOC's investigation could reasonably be expected to include future denials of promotion that occurred before its investigation was complete. *Miller,* 185 F.Supp.2d at 1264; *Butler*, 203 F.R.D. at 581.  Accordingly, the court finds that summary judgment on these grounds as to the 1999 promotions is not merited.

However, summary judgment is appropriate on the Title VII 2001 promotion claims because they clearly arose after the September 2000 conclusion of the EEOC's investigation and therefore could not have reasonably been part of the EEOC's investigation. *Miller,* 185 F.Supp.2d at 1264; *Butler*, 203 F.R.D. at 581.  Thus, Plaintiff's 2001 promotion claims can only proceed under § 1981.

### 3.   All Four of the 1999 and 2001 Promotion Claims Fail on Their Merits

In any event, the court finds that summary judgment is appropriate on the merits of each of these claims.  In order to establish a prima facie case of racial disparate treatment in promotions, Plaintiff must show: (1) she is a member of a protected class; (2) she was qualified and applied for

---

[11] Plaintiff amended her June 1998 charge once in August of that same year, adding only sex discrimination and Equal Pay Act allegations.  (Williams Depo., Exs. 25, 26).  Plaintiff failed to amend her charge again to include any other claims.

a promotion;[12] (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who are not members of the protected class were promoted.  *E.g., Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir. 1999).

               **a.**      **1999 Promotion of Wright and 2001 Promotion of Johnson.**

First, summary judgment is appropriate on Plaintiff's claims based on the 1999 promotion of Wright and the 2001 promotion of Johnson, because both successful candidates, like Plaintiff, are African-American, and Plaintiff has presented no evidence of pretext.

Plaintiff correctly argues that a prima facie case is not wholly dependent upon meeting the fourth requirement of the *McDonnell Douglas* test.  *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir. 1995).  As the Eleventh Circuit noted, "[a] plaintiff may have a prima facie case based on the first three requirements despite the fact that the employer hired a minority to fill the vacancy left by the plaintiff."  *Edwards,* 49 F.3d at 1521 (citing *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534-35 (11th Cir.1984)).   However, the Eleventh Circuit has cautioned that, "the [district] court must consider whether the fact that a minority was hired overcomes the inference of discrimination otherwise created by the evidence presented by the plaintiff.  Courts considering such a situation have looked at several factors including the length of time between the discharge and the replacement, whether the replacement by the hired minority occurred after the filing of an EEOC complaint, and, if the hired person had a history with the

---

    [12] When there is no formal posting of a job's availability, a plaintiff is not required to show that she applied for the promotion, but nonetheless must establish "that the company had some reason or duty to consider h[er] for the post" in order to make out a *prima facie* case.  *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir. 1984).  *Carmichael*'s progeny clarifies that a plaintiff must show that "[the employer] was on notice that he 'might reasonably be interested [in the position].'"  *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1560 (11th Cir. 1986).

employer, whether it was a positive history." *Edwards,* 49 F.3d at 1521.

In this case, the undisputed evidence indicates that the 1999 promotion of Wright, a minority, was not the result of race discrimination. There were no significant delays between the posting of the job and the promotion of Wright, nor was there any intervening claim of discrimination. Defendant points out that, although this position was posted, Plaintiff did not apply for it. (Wright Depo. 67, Anderson Dec. ¶ 8, Ex. 3). Plaintiff argues – with only a general citation to her declaration – that "the position w[as] not posted on the Financial Center bulletin board and she only learned about the vacant position[] after Wright [was] promoted." (Doc. # 58, at 16-17). Williams' deposition testimony, however, is that she *did* see the posting, and in fact studied it fairly closely. (Williams Depo. 282-83).[13]  Plaintiff may not engineer a dispute of material fact by impeaching her prior sworn testimony, *Van T. Junkins v. U.S. Indus.,* 736 F.2d 656, 657-58 (11th Cir. 1984), and therefore the court finds that this portion of Plaintiff's declaration is due to be stricken. Plaintiff has adduced no credible evidence to demonstrate that Wright's promotion was a pretext for race discrimination.

With respect to the 2001 promotion of Kevin Johnson, an African-American Grade 30 Manager, to the Financial Services Director position, Plaintiff has not presented sufficient evidence

---

[13] Plaintiff testified that,  "The job was posted and it was posted at the same salaries. It had a starting salary on the job posting. . . . I did not ever see anything after those promotions that would verify that other than that job posting that said there was a starting salary." (Williams Depo. 282-283).  Plaintiff points out that the Birmingham branch's posting policy required that job vacancies were to be posted at the main building "on the fourth floor bulletin board outside the Cafeteria and the bulletin board at the Financial Center for a period of seven consecutive days," (Williams Dec., Ex. B), and she complains that this position was not posted at the Financial Center.  Although it is not entirely clear to the court what Plaintiff believes this proves, Plaintiff appears to claim that the position was not posted in the Financial Center in an effort to keep Plaintiff from seeing the posting. This argument is without merit and unsupported by any evidence other than Plaintiff's "conspiracy theory" conjecture.

of pretext to withstand summary judgment.  Again, there was no delay in promoting Johnson or intervening claim of discrimination.  The Defendant's legitimate reason – that Williams was not even suggested for the position because Johnson was more qualified than she – remains uncontroverted by Plaintiff.  (Anderson Dec., at ¶ 15).[14]   In fact, Plaintiff's only "evidence" of pretext – that the position was not posted and that it was not technically in the same "job family" as Johnson's prior position (Doc. # 58, at 18-19) – is undermined by Defendant's explanation that the position was not subject to the posting requirement because it was a "career progression" move into a supervisory position.  (Anderson Dec., ¶ 16).[15]   Plaintiff has not presented sufficient evidence to demonstrate that Defendant was motivated by race discrimination when it promoted Johnson, a minority, into the 2001 Director position.  *Compare Jones v. Western Geophysical Co. of Am.*, 669 F.2d 280 (5th Cir.1982) (finding inference of discrimination where hiring of replacement occurred almost a year later, after a complaint was filed with the EEOC, and the 1person hired already had been hired and fired for poor performance by the employer).  Accordingly, Plaintiff cannot present substantial evidence of race discrimination with respect to either the 1999 promotion of Wright or the 2001 promotion of Johnson, both minorities.

---

[14] Defendant explained that Johnson had exhibited the skills needed to perform at the Director level. (Anderson Dec. ¶ 14). At the time of his promotion, Johnson had not only mastered the technical and operational understanding of the Payment Services Operations area, but he had demonstrated outstanding employee relations and supervisory skills. (Anderson Dec. ¶ 14).

[15] The "Birmingham Branch Policy on Employment/Job Posting," which requires posting of vacant positions applies only to *non-supervisory* positions.  (Anderson Dec. Ex. 8).  Moreover, the policy does not require posting for positions "that are . . . filled by qualified candidates from the departments having the vacancies."  (Anderson Dec. Ex. 8).  Johnson was already a manager in the department which had the vacancy.  (Anderson Dec. ¶ 16).

**b.        1999 and 2001 promotions of Pinson.**

With respect to the 1999 and 2001 promotions of Pinson,  Defendant argues that: (1) Plaintiff never applied for the 1999 position, (Pinson Depo. 128-30, Anderson Dec. ¶ 8, Ex. 3), and (2) Plaintiff was not qualified for the 2001 position because she was not already a Director, and it is undisputed that the Bank did not consider anyone who was not already a Director. (Anderson Dec. ¶ 20; Fullerton Depo. 170-71).

With respect to the 1999 position, Plaintiff again claims that "the position w[as] not posted on the Financial Center bulletin board and she only learned about the vacant position[] after Wright [was] promoted." (Doc. # 58, at 16-17).  As the court explained above, that portion of Williams' declaration is due to be stricken because it contradicts her deposition testimony that she did, in fact, see the posting. *See Van T. Junkins,* 736 F.2d at 657-58.  Plaintiff has presented no other evidence of pretext, and summary judgment is appropriate on this claim.

As for the 2001 position awarded to Pinson, Defendant explains that it reorganized the responsibilities of its Director staff and decided to assign responsibility for the Business Development and Customer Service areas to Pinson, who was already a Director in Payor Bank Services. The Bank considered Pinson's unique relationship with existing customers, its belief that he had the broadest and deepest knowledge of check processing functions of anyone in the Branch, and his years of management experience in check processing, an area in which he had worked continuously since he began working for the Bank in 1978. (Anderson Dec. ¶ 17).

Plaintiff claims that the 2001 changes in Pinson's job duties were a promotion; Defendant claims that Pinson was not promoted but simply assigned additional responsibility.  (Anderson Dec, ¶ 10, 13, 17-20, Ex. 7).   This semantic difference is of no moment.  There is no evidence that this

16

decision was a pretext for race discrimination. It is undisputed that the Bank did not consider anyone who was not already a Director for this position. (Anderson Dec. ¶ 20; Fullerton Depo. 170-71). Although Plaintiff disagrees with the Bank's decision to fill this position with another Director, rather than with a non-Director like herself, she cannot substitute her judgment for that of Defendant. *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000).

The Bank has also put forth evidence to demonstrate that Plaintiff was not otherwise qualified for *any* Director position because of performance issues, including the inability to work harmoniously with the Bank's Officers and problems with outside vendors, subordinates, superiors, and peers. (Anderson Dec. ¶ 4).[16]   *See Chapman*, 229 F.3d at 1033-1034 ("Personal qualities . . . factor heavily into employment decisions concerning supervisory or professional positions); *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) (finding poor relationship between plaintiff and staff and administrators disruptive). Although Plaintiff quarrels with Defendant's assessment of her performance and claims that her qualifications were superior to those of Pinson, the court finds no evidence of pretext because any disparities in qualifications are not "so apparent as virtually to jump off the page and slap you in the face." *GTE Florida, Inc.*, 226 F.3d at 1253. Plaintiff has not adduced any evidence that she was *even qualified* for the Director position awarded to Pinson, much less demonstrated disparities in qualifications that are so patently clear.[17]   Summary judgment

---

[16] At least in this respect, Plaintiff misunderstands the Bank's argument. The evidence and argument presented by the Bank on this issue simply explain why Plaintiff had not (and was not) qualified to be a Director at all. It is undisputed that Directors were the only group considered for the position awarded to Pinson.

[17] Even putting aside any evidence or argument regarding Defendant's assessment of Plaintiff's performance, it is undisputed that: (1) Plaintiff was not a Director; (2) Pinson was a Director; and (3) Defendant desired an incumbent who possessed the qualification of previous Director experience. As noted earlier, the court will not substitute its judgment for that of the Bank

is appropriate on this claim.

Accordingly, for all of the procedural and substantive reasons outlined above, the court finds that summary judgment is due to be granted on all of Plaintiff's disparate treatment promotion claims.

**B.      Retaliation**

Plaintiff also claims that she suffered retaliation for filing a complaint of race discrimination with the Equal Employment Opportunity Commission.  (Doc. # 1).   To establish a prima facie case of retaliation under Title VII, Plaintiff must prove: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse personnel action; and (3) there is a causal link between the protected activity and the adverse employment action. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998).

In the complaint, Plaintiff alleged only one employment decision that she contends was motivated by retaliation – "unfairly lowered performance evaluations." (Complaint ¶ 65).[18] Plaintiff asserts, that although "she typically did not receive evaluations that fell below the standards that

---

when it comes to placing importance on that experience.  For that reason alone, the court finds that the Bank reasonably concluded that Pinson was better qualified for the position in question.

One additional point regarding this subject is worth making.  Plaintiff attempts to play the following game of semantics:  The Bank cannot claim I was less qualified than Pinson because it never even considered me for the job.  In a different context, this may be a valid argument.  Here, however, it is not because the same fact–Pinson had Director experience, Plaintiff did not–made (1) Pinson better qualified than Plaintiff for the position and (2) Plaintiff not qualified for it.

[18] In her brief in opposition to summary judgment, Plaintiff expands her claims to include retaliation in the form of failure to promote her and "ostracizing" her.  (Williams Dec. at ¶ 17).  Plaintiff has utterly failed to present any evidence that she was denied promotions as a result of any protected activity.  Moreover, any claim that Plaintiff was "ostracized" has not been supported by record evidence and regardless, falls far short of an adverse employment action.  *See* discussion regarding adverse employment action, *infra.*

were set for her position, she typically did not receive an accurate rating." (Complaint ¶ 65).

The undisputed facts indicate that in January and December 1997, Plaintiff received "Exceptional" ratings on her performance evaluations. (Williams Depo., Exs. 5, 6). She filed her EEOC charge on June 25, 1998, and thereafter received an "Exceptional" rating on her June 1998 "exit" evaluation. (Williams Depo., Ex. 25). Plaintiff then amended her EEOC charge in August 1999. Approximately ten months later in June 1999, she was rated by a different supervisor on her first performance evaluation in a new job position, and she received a "Doing Fine" rating. (Williams Depo., Ex. 25).[19] In 2000, she was rated by a different supervisor, and received another "Doing Fine" evaluation. (Williams Depo. Ex. 9).

The above described performance evaluations simply do not amount to an "adverse personnel action" cognizable under Title VII. Courts have uniformly held that to establish a prima facie case of discrimination or retaliation a plaintiff must establish that she suffered an adverse employment action. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000); *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir.1999); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir.1997); *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1452 (11th Cir. 1998); *McCabe v. Sharrett*, 12 F.3d 1558, 1563 (11th Cir. 1994). To do so, Plaintiff must show a *serious and material change* in the terms, conditions or privileges of employment. *Davis v. Town of Lake Park*, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001).

---

[19] Although Plaintiff points out that Anderson and Margaret Thomas signed off on this 1999 evaluation, just as they had on all her prior evaluations (Williams Depo., Exs.5,6,7,8), there is no dispute that Plaintiff was supervised by someone new when she became a Customer Service Coordinator.

19

The Eleventh Circuit has consistently held that mere performance feedback and supervisory coaching are not the types of employment events that are actionable under Title VII:

> An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee. . . . Conduct that falls short of an ultimate employment decision must meet some threshold level of substantiality . . . to be cognizable under the anti-retaliation clause.

*Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (citations and internal quotations omitted). In this case, Plaintiff's evaluations were not negative– she received a "Doing Fine" rating for each performance review administered after 1998. Even Plaintiff admits that her evaluations did not fall below the standards for her position. (Complaint ¶ 65). Rather, she merely complains that she did not receive the highest possible performance evaluations.[20]

Moreover, Plaintiff has not shown that her evaluations affected her employment in any regard. Although Plaintiff claims that her evaluation scores deprived her of "the substantial benefits she would have enjoyed had she been rated as 'Outstanding,'" she does not explain what those benefits are or even why the loss of those benefits meets the "threshold level of substantiality . . . to be cognizable under the anti-retaliation clause." *Gupta*, 212 F.3d at 587. Because Plaintiff's "Doing Fine" evaluations do not constitute a "serious and material" change in her employment, summary judgment is appropriate on her retaliation claim. *See, e.g., Merriweather v. Alabama Dep't of Public*

---

[20] Even assuming Plaintiff's evaluations were "negative," they still do not rise to the level of an adverse employment action. As the Eleventh Circuit has noted, "[a]n employee who receives criticism or a negative evaluation may lose self-esteem and conceivably may suffer a loss of prestige in the eyes of others who come to be aware of the evaluation. But *the protections of Title VII simply do not extend to everything that makes an employee unhappy*. . . . Federal courts ought not be put in the position of monitoring and second-guessing the feedback that an employer gives . . . ." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001)(emphasis in original).

*Safety*, 17 F. Supp. 2d 1260, 1274 (M.D. Ala. 1998) (finding that "exceeds expectations" and "meets expectations" ratings were neither negative ratings nor adverse employment actions); *Montandon v. Farmland Indus.*, 116 F.3d 355 (8th Cir. 1997) (holding that evaluation score of 30 points less than the previous year was not an actionable adverse employment action).[21]

Summary judgment is also appropriate on this claim because Plaintiff has failed to provide any prima facie evidence of a causal relationship between the filing of her EEOC charges and her evaluations. Defendant points out – and Plaintiff does not controvert – that the evaluation immediately following the filing of Plaintiff's June 1998 EEOC charge resulted in an "Exceptional" rating. (Williams Depo. Ex. 7). Moreover, the ten-month lapse between the filing of Plaintiff's August 1998 amended charge and her June 1999 "Doing Fine" evaluation negates any inference of retaliatory animus. *See Clark County School District v. Breeden*, 532 U.S. 268 (holding temporal proximity between protected activity and adverse employment action must be "very close" and citing affirmatively several court of appeals cases for the proposition that a three to four month gap is not enough); *Higdon v. Jackson*, No. 03-14894, 2004 WL 2903979, at *7 (11th Cir. Dec. 16, 2004) (relying upon *Breeden* opinion and concluding that 3-month period is insufficient); *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (recognizing that temporal proximity must be very close); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (finding that 3-month period is insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (determining that 4-month period is insufficient).

---

[21] To the extent that Plaintiff is claiming that her performance evaluations were the result of race discrimination, the same analysis applies. Plaintiff's evaluations do not rise to the level of an adverse employment action. Moreover, Plaintiff has not presented any evidence that race motivated her evaluation ratings, or that "similarly situated non-minority employees[] were treated more favorably." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998).

Finally, the facts indicate that Plaintiff's June 1999 evaluation was completed by a different supervisor who was unaware of Plaintiff's EEOC charge at the time of her review.  (Williams Depo. 124-125, Ex. 18; LaRue Depo. 97-98). "To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct . . . ." *Gupta v. Florida Board of Regents*, 212 F.3d at 590.  "It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression." *Bass v. Board of County Comm'rs*, 256 F.3d 1095, 1119 (11th Cir. 2001).[22]

The undisputed facts demonstrate that Plaintiff, after having just assumed a new position with the Bank, was reviewed by a different supervisor and received a slightly lower – and admittedly not negative – performance evaluation ten months after the filing of her EEOC charge.[23]  There is simply

_____

[22] In fact, the only evidence presented by Plaintiff of Defendant's knowledge of her EEOC charges is that Fred Herr, a member of the Bank's Management Committee, found out about Williams' EEOC Charge in 1998. (Herr Depo. 63)   There is no evidence that Herr participated in any way in the evaluation of Plaintiff and it is undisputed that Herr was not present for any Management Committee discussion or consideration of the promotions that Plaintiff claims she should have received.  (Herr Depo. 73-81).

[23] Plaintiff's arguments miss the mark and fail to address any of the deficiencies in her prima facie case. First, Plaintiff disagrees with Defendant's use of subjective criteria in the evaluation process.  (Doc. # 58, at 33 (citing *Hill v. Seaboard Coast Line RR.*, 885 F.2d 804, 809 (11th Cir.1989)).   The Eleventh Circuit has made clear that a subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the Defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion. *Chapman*, 229 F.3d at 1032. Next, Plaintiff disputes Defendant's opinion of her performance by (1) pointing to a letter from a Bank Vice-President which praised her accomplishments and the "overall sentiment among [her]subordinates," and (2) providing a number of declarations from subordinates as to her qualities as a manager.  It is well-settled that Plaintiff's personal opinion of her performance does not create a genuine issue of material fact as to whether Defendant honestly believed that Plaintiff's performance warranted a rating of "Doing Fine" rather than "Exceptional."  *See Holifield v. Reno*, 115 F. 3d 1555, 1565 (11th Cir. 1997) (reiterating that the opinion of the decision-maker, not the employee's own perception of her abilities, is what matters in an intentional discrimination case).

no evidence that any drop in her evaluation score was at all linked to Plaintiff's prior protected activity.

###    C.    Disparate Compensation

Plaintiff alleges that she was discriminated against in terms of her compensation in violation of Title VII and the Equal Pay Act.  To establish a *prima facie* case of race discrimination in compensation under Title VII, Plaintiff must prove that she "was paid less than a member of a different race was paid for work requiring substantially the same responsibility." *Gibbons v. Auburn Univ.*, 108 F. Supp. 2d 1311 (M.D. Ala. 2000); *see Morgan v. City of Jasper*, 959 F.2d 1542 (11th Cir. 1992).  In order to establish a *prima facie* case under the EPA, Plaintiff must show that the Bank "pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)(quoting 29 U.S.C. § 206(d)(1)).  Under both statutes, Plaintiff must establish similarity between her job and a male comparator's position, focusing on the primary job duties "and the demands the jobs impose with regard to skills, effort, responsibility, and working conditions." *Hammock v. Nexcel Synthetics, Inc.*, 201 F. Supp. 2d 1180, 1188 (N.D. Ala. 2002).  If Plaintiff can prove a prima facie case under the EPA, the Bank can still obtain summary judgment by demonstrating that the difference was based on "any factor other than sex."  29 U.S.C. §206(d)(1).[24]

---

Moreover, opinions from subordinates are immaterial.  *E.g., Huskey v. Jefferson Smurfit Corat*, 33 F. Supp. 2d 1073, 1080 (N.D. Ga. 1998) (citation omitted).

[24] To assert the affirmative defense, the Bank must:

> prove by a preponderance of the evidence that the pay differential was
> justified under one of the four affirmative defenses in section 206(d).

In this case, Plaintiff's only comparator is Russell Lloyd, whom she claims performed the same job of Financial Sales/Customer Services Coordinator, but started at a salary $1900 more than Plaintiff. (Williams Dec. at ¶ 15).[25]   Plaintiff contends that she and Lloyd had the same job title, were placed into the position at the same time, and had the same duties and responsibilities. (Williams Dec.  at ¶ 15).

It is important to note that neither job titles nor job descriptions control the court's analysis of similarity. *E.g., Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, n.12 (5th Cir. 1973). "'The prima facie case ... focuses solely on the primary duties of each job, not duties that are incidental or insubstantial,' and, *although formal job titles or descriptions may be considered, the controlling factor* in the court's assessment of whether two jobs are substantially equal *must be actual job content*." *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998) (emphasis added)(quoting *Miranda v. B & B Cash Grocery Store*, Inc., 975 F.2d 1518, 1533 (11th Cir.1992) ("[O]nly the skills and qualifications actually needed to perform the jobs are considered.")).

A review of the undisputed evidence in this case reveals that Lloyd did not have "substantially the same responsibility" as Plaintiff. *See Pittman v. Hattiesburg Muni. Sep. Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981). Although Plaintiff claims that both she and Lloyd generally "dealt with customers, spent time on the telephone with customers, [and] we visited customers,"

---

> The defendant employer may establish that the discrepancy in wages is due to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

*Corning*, 417 U.S. at 196-97 (quoting 29 U.S.C. Section 206(d)(1)).

[25] It is undisputed that Plaintiff's pay claims extend only until June 2001, when Plaintiff's compensation undisputedly passed Lloyd's.

(Williams Depo. 340), Plaintiff also admitted that she did not know the specifics of Lloyd's job, and did not believe they had the same job responsibilities:

> Q:  Did Mr. Lloyd do the same thing as you?
>
> A:  No, he did not.

(Williams Depo. 280, 349).

It is undisputed that Lloyd's primary responsibility was selling services to existing and potential customers. "In essence, his was a sales job." (Anderson Dec. ¶ 5).[26]  Plaintiff, on the other hand, was primarily responsible for training customers on how to present better quality work to the Bank and to help them when problems arose. (Anderson Dec. ¶ 5).[27]  While Lloyd was responsible for bringing in new check collection revenue and had specific monetary targets for revenue, (Anderson Dec. ¶ 5), Plaintiff had no *overall* revenue targets (although she did have some minimal

---

[26] Plaintiff claims that the court should discount Anderson's declaration because it is not supported by documentary evidence.  This argument is without merit.

[27] Plaintiff describes her job in Business Development as follows:

[D]irect responsibility to develop an External Quality Program to decrease external error rate and create a better working relationship with the external customer base. This has been accomplished with a customer training program developed and implemented, Visitations, Partnerships Meetings established with the large city banks, participation in the local Clearinghouse Association, working in partnership with district peers and Birmingham Payments management, customer notices sent out via Proactive Steps and Operations Bulletins. The customer training manual developed was shared with other offices in the Sixth District and is currently being used in it [sic] entirety by two offices and sections of the manual by other offices in the district. In June 1998 the external error rate was above 23.0 and it is currently less than 9.0

(Williams Depo. Ex. 2, p. 021602).

revenue targets for class training fees she conducted for customers). (Anderson Dec. ¶ 5).[28]

Additionally, the evidence indicates that Lloyd traveled frequently to remote locations to make sales calls – typically traveling over sixty percent of his work time. (Anderson Dec. ¶ 6). Plaintiff's travel, however, was minimal and was primarily restricted to the Birmingham metro area. (Anderson Dec. ¶ 5).[29]

The court finds that Plaintiff has failed to establish a prima facie case of pay discrimination under Title VII and the EPA because the undisputed evidence shows that Lloyd and Plaintiff did not have similar job duties.[30]  Accordingly, summary judgment for Defendant is due to be granted on these claims.

### D.      The June 1998 Reassignment of Plaintiff

In 1998, Plaintiff was removed from her Grade 29 management position over the Payor Bank Services Department and transferred to the Financial Sales/Customer Services Coordinator position in Business Services to "work with [] customers to improve the quality of the work they submitted,

---

[28] Plaintiff points to a memo from her supervisor regarding "Objectives for June-December, 1998," which listed as an objective,  "Help achieve targeted revenue of $12,321,118," as "evidence" that one of her four objectives was sales.  (Doc. # 60, Ex. 40).  But as Defendant points out, even when Plaintiff's sales target was at its highest at $40,000, it was still only 0.3% of the overall target, as contrasted with Lloyd's substantial revenue targets.  (Anderson Dec. ¶ 5).

[29] Although Plaintiff claims that she traveled to Huntsville, Dothan and Carrolton as part of her 2002 seminar schedule,  (Doc. # 60, Ex. 40), Defendant points out that all of those trips were off-site seminar – not sales – trips that actually bolster the disparity of the travel conditions between Plaintiff's and Lloyd's jobs.

[30] Even if Plaintiff could establish a prima facie case, Defendant has offered the following "other than sex" factors why Lloyd's salary was initially higher than Plaintiff's:  (1) Lloyd had been functioning as a Customer Services representative for 5 years and did not have "as steep a learning curve" in the area; (2) their job functions, duties and responsibilities were different - Lloyd's job involved selling and Plaintiff's did not; and (3) Lloyd's job involved substantial travel while Plaintiff's did not.  (Anderson Dec. ¶ 5,6).

and to deal with customer problems."  (Anderson Dec. ¶ 4).  Plaintiff claims that this reassignment was discriminatory because she was assigned to a desk only recently vacated by a Grade 27 clerical worker and that "weeks passed" before she was given new job responsibilities.  (Williams Depo. 177-179).

Defendant claims that the assertion of this claim, more than two years after her judicial complaint and more than a year after first responding to the Bank's motion for summary judgment, is improper.  The court agrees.  As noted earlier, only the following claims were advanced by Williams in her complaint:  (1) disparate treatment in promotions because of race (Doc. # 2, ¶ 63, 69, 77); (2) discriminatory pattern and practice/ disparate impact of rating African-American employees lower on performance reviews than white employees (Doc. # 2, ¶  64, 69, 77); (3) retaliation in the form of lowered performance evaluations (Doc. # 2, ¶ 65); (4) denial of training opportunities because of race (Doc. # 2, ¶ 66, 69); and (5) discriminatory compensation because of race and/or sex (Doc. # 2, ¶  67, 69, 77, 84).  The 1998 reassignment of Plaintiff from management was not alleged or even mentioned in the complaint.

Moreover, Plaintiff made no reference to her reassignment claim in her *first* opposition brief to Defendant's summary judgment filed on April 18, 2003, despite the fact that Plaintiff addressed the merits of all of Defendant's arguments and *catalogued those claims not addressed by Defendant's motion*.  (Doc. # 20).  In fact, Plaintiff's reassignment claim was raised for the first time in her *second* brief in opposition to Defendant's summary judgment motion, submitted over one year later on May 3, 2004, after the court permitted the parties to refile their briefs.  (Doc. # 58).[31]

---

[31] The court received this case by reassignment on October 1, 2003. (Doc. # 33).  At that time, Defendant's initial motion for summary judgment was already pending (Doc. # 5), and Plaintiff had already filed an opposition brief thereto which did not mention a claim based on her 1998

It is a fundamental principle that a complaint must state Plaintiff's claims plainly.  Fed. R. Civ. P. 8(a).[32]  Although courts have considerable discretion to allow parties to amend their complaints, *Plaintiff* must take the initiative to do so.  *See Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001 )("When Plaintiffs have had ample opportunity to amend their complaint, but have failed to do so, nothing compels us to remand to amend... when plaintiff failed to request leave to amend the complaint in district court."); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (finding no obligation for a district court to *sua sponte* grant leave to amend).

The court finds no basis to consider any purported claim based on Plaintiff's 1998 reassignment given that: (1) Plaintiff did not plead this claim in her complaint nor seek to amend to include it; and (2) this claim was raised by her counsel for the first time in her *second* opposition to the motion for summary judgment.  *See e.g., Thomas v. T.G. Egan*, 1 Fed. Appx. 52, 54 (2nd Cir. 2001)(finding that claims raised for the first time after the summary judgment deadline are due to

---

[32] reassignment from management.  (Doc. # 20).  Also pending at that time was a request by Plaintiff to either strike the affidavit of Lee Jones (submitted by Defendant in support of summary judgment) or allow Plaintiff to depose him.  (Doc. # 19).  After hearing argument from the parties, the court permitted the deposition of Lee Jones and allowed the parties to supplement their prior summary judgment arguments, provided such supplementation was limited to the addition of factual information gleaned from Jones' deposition.  (Doc. # 36).  The court specifically noted that it would only allow supplementation of prior summary judgment arguments; the court never intended for the parties to  raise new arguments or assert new claims.   Nonetheless, Plaintiff's second opposition brief asserted – for the first time in this case – a claim based on her 1998 reassignment from management.

[32] The court notes that Plaintiff's complaint is the quintessential shotgun pleading that has often been criticized by this Circuit.  *See, e.g., Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) (admonishing that the Eleventh Circuit "has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay").  When questioned about the nature of her complaint, Plaintiff's counsel readily admitted that the complaint was drafted as a multi-plaintiff case, and that, after the cases were severed, the complaint was never amended.

be dismissed); *Beckman v. United States Postal Service,* 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000)(same).

**IV.    Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is due to be granted. The court finds that no genuine issues of material fact remain for trial as to Plaintiff's claims and that Defendant is entitled to judgment as a matter of law.  The court also finds that the motions to strike are due to be denied, except as set forth in this opinion. A separate Final Judgment will be entered.

**DONE** and **ORDERED** this ____21st_____ day of January, 2005.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE